## ORAL ARGUMENT HAS NOT BEEN SCHEDULED

## Case Nos. 13-5200, 13-5204

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

PRIME TIME INTERNATIONAL COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,

Defendants-Appellees.

And

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

PRIME TIME INTERNATIONAL COMPANY,

Defendant-Appellant.

Appeal from the District Court of the District of Columbia
Nos. 06-1077 and 12-910
Judge Royce C. Lamberth

## BRIEF OF APPELLANT PRIME TIME INTERNATIONAL COMPANY

Jerry Stouck
Greenberg Traurig LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
(202)331-3173
stouckj@gtlaw.com
Counsel for Appellant

Date: October 24, 2013      Prime Time International Company

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

### A. Parties and Amici.

The appellant is Prime Time International Company, f/k/a Single Stick, Inc.

The appellees are Thomas J. Vilsack, Secretary of Agriculture and the United

States Department of Agriculture in No 13-5200 and The United States of America

in No. 13-5204.

### B. Rulings Under Review.

The rulings under review are the Order and

Memorandum Opinion of the District Court entered in the consolidated cases of

*Prime Time International Co. v. Vilsack,* No. 06-1077, and *United States v. Prime*

*Time International Co.,* No. 12-910 (D.D.C. June 10, 2013 (Lamberth, J.). That

Order is in the Joint Appendix ("JA") at JA__, and that Memorandum Opinion is at

JA__.

### C. Related Cases.

One of the cases on appeal here, *Prime Time*

*International v. Vilsack,* No. 06-1077, was previously before this Court as Case

No. 09-5099. In a published opinion, reported at 599 F.3d 678, the Court reversed

and remanded the previous district court decision, which is reported as *Single*

*Stick, Inc. v. Johanns,* 601 F. Supp. 2d 307 (D.D.C. 2010). There are no other

related cases in this or any other court.

## <u>CORORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Circuit Rules of this Court, Appellant Prime Time International Company, through counsel, hereby states that it does not have a parent company nor does a publicly held corporation own 10% or more of its stock.

# TABLE OF CONTENTS

Table Of Authorities ................................................................. iii

Glossary Of Abbreviations ..................................................... viii

Jurisdictional Statement ..............................................................1

Statement Of Issues....................................................................2

Statutes And Regulations ...........................................................3

Statement Of The Case ...............................................................4

Statement Of Facts .....................................................................8

   A.     Allocation of FETRA Assessments ...........................................8

   B.     FETRA Assessments Levied Against Prime Time ...................12

   C.     Proceedings Below – Prior Litigation.......................................13

   D.     Proceedings Below – Current Litigation...................................15

   E.     The District Court Decision Under Review...............................20

Summary Of Argument...............................................................22

Standing......................................................................................25

Argument....................................................................................27

   I.    USDA's Per-Stick Rule Is Invalid Under *Chevron* Step 1 ........................27

       A. USDA's Unchanged Per-Stick Rule is Contrary To
          FETRA's Express Statutory Language..................................27

       B. This Court Remanded So USDA Could Give Effect To
          What The Court Recognized Is FETRA's "Statutory Mandate,"
          Not For USDA To Reaffirm The Discredited Per-Stick Rule..............34

   II.   USDA's Per-Stick Rule Is Also Invalid Under *Chevron* Step 2 ...............39

1. The Per-Stick Rule Is Not A "Permissible" Interpretation of FETRA ..................................................................... 40

2. USDA's Explanation Of The Per-Stick Rule In The Final Interpretation Does Not Give Effect To FETRA's "Pro Rata Basis" Requirement ...................................................... 45

    a.    The Final Interpretation is Internally Inconsistent And Therefore Arbitrary ...................................................... 45

    b.    The Final Interpretation Does Not Justify Or Even Address The Actual Language of the Per-Stick Rule ................... 51

    c.    The Final Interpretation Is Also Not Entitled To Deference Because It Is Not The Product of Any Actual Rulemaking And Was First Developed To Support USDA's Litigation Position And Financial Interest In The Disputed FETRA Assessments ................................................................... 52

3. The District Court's Rationale For Upholding The Per-Stick Rule Differs From That In The Final Interpretation, But Also Gives No Effect To FETRA's "Pro Rata Basis" Requirement ...................................................... 54

III.    The Court Should Invalidate The Per-Stick Rule, And Because | Another Remand To USDA Would Be Futile, Direct The District Court To Determine Prime Time's FETRA Assessment Liability Based On Prime Time's Allocation Method – Which This Court In *Prime Time* Recognized To "Interpret FETRA's Provisions Consistently And In Harmony" ............................................... 58

Conclusion ...................................................................................... 60

Certificate Of Compliance ........................................................... 61

Certificate Of Service ................................................................... 62

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs v. Young,*
  920 F.2d 984 (D.C.Cir. 1990)....................................................................44

*Alabama Power Co. v. EPA,*
  40 F.3d 450 (D.C. Cir. 1994)....................................................................29

*Am. Fed'n of Gov't Emps., AFL-CIO  v. Gates,*
  486 F.3d 1316 (D.C. Cir. 2007)................................................................43

*American Wild Horse Preservation Campaign v. Salazar*,
  859 F. Supp. 2d 33 (D.D.C. 2012)............................................................26

*Americans for Safe Access v. Drug Enforcement Admin.*,
  206 F.3d 438 (D.C. Cir. 2013)..................................................................25

*Athlone Industries, Inc. v. Consumer Product Safety Comm'n,*
  707 F.2d 1485 (D.C. Cir. 1983)................................................................59

\* *Bowen v. Georgetown Univ. Hospital,*
  488 U.S. 204 (1988) ..................................................................................53

*Bus. Roundtable v. SEC,*
  647 F.3d 1144 (D.C. Cir. 2011)........................................................ 24, 47

*Catawba Cty., North Carolina v. EPA,*
  571 F.3d 20 (D.C. Cir. 2009).....................................................................36

\* *Chevron U.S.A., Inc. v Natural Res. Def. Council,*
  467 U.S. 837 (1984) ................................................. 20, 23, 28, 37, 40

\* *Citizens to Save Spencer Cnty v. EPA,*
  600 F.2d 844 (D.C. Cir. 1979).......................................................... 42, 43

*City of Anaheim v. FERC,*
  558 F.3d 521 (D.C. Cir. 2009)........................................................... 28, 29

*Clark v. Martinez,*
  543 U.S. 371 (2005) .......................................................................... 45, 46

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980) ........................................................31

\* *Corely v. United States*,
556 U.S. 303 (2009) ........................................................27

*Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D.D.C. 2005) ..................................26

*Gen. Chem. Corp. v. United States*,
817 F.3d 844 (D.C. Cir. 1987).........................................47

*Home Concrete & Supply Co., LLC v. United States*,
634 F.3d 249 (4th Cir. 2011) ...........................................53

\* *In re Surface Mining Regulation Litig.*,
627 F.2d 1346 (D.C. Cir. 1980).......................... 27, 41, 42

*MCI Telecomm. Corp. v. AT&T Co.*,
512 U.S. 218 (1994) ........................................................28

*Natural Res. Defense Council v. Daley*,
209 F.3d 747 (D.C. Cir. 2000).........................................45

*Norfolk & Western Ry. Co. v. United States*,
768 F.2d 373 (D.C. Cir. 1985).........................................28

*PDK Laboratories, Inc. v. DEA*,
362 F.3d 786 (D.C. Cir. 2004).........................................38

*Peter Pan Bus lines, Inc. v. Federal Motor Carrier Safety Admin*,
471 F.3d 1350 (D.C. Cir. 2006).......................................38

\* *Prime Time Int'l Co. v. Vilsack*,
599 F.3d 678 (2010) ............................. 2, 5, 7, 10, 14, 15, 16,
23, 25, 26, 27, 30, 32, 35,
36, 37, 39, 44, 54, 58, 59

*Ratzlaf. v. United States*,
510 U.S. 135 (1994) ........................................................47

*Republican Nat. Comm. v. FEC*,
76 F.3d 400 (D.C. Cir. 1996)...........................................44

*Sierra Club v. EPA,*
  536 F.3d 673 (D.C. Cir. 2008)................................................................37

*Single Stick, Inc. v. Johanns,*
  601 F. Supp. 2d 307 (D.D.C. 2009) ....................................................5, 14

*United States v. Santos,*
  553 U.S. 507 (2008) ...........................................................................46

\* *Village of Barrington, Illinois v. Surface Transp. Bd.,*
  636 F.3d 650 (D.C. Cir. 2011)......................................... 22, 37, 38, 40

## Statutes

7 U.S.C. § 518 *et seq.*............................................................................2, 4

7 U.S.C. § 518d(a)(2)................................................................................8

7 U.S.C. § 518d(a)(3)..............................................................................30

7 U.S.C. § 518d(b)....................................................................................8

7 U.S.C. § 518d(b)(1)..............................................................................58

7 U.S.C. § 518d(c)(1)................................................................................8

7 U.S.C. § 518d(c)(2)...........................................................................8, 47

7 U.S.C. § 518d(e)...................................................................................30

\* 7 U.S.C. § 518d(e)(1)..................................................... 4, 5, 6, 9, 15, 19, 22, 24,
                                                           29, 31, 32, 33, 37, 40, 41, 43,
                                                           45, 46, 47, 48, 51, 52, 54, 55,
                                                           56, 57, 58

7 U.S.C. § 518d(e)(2).................................................................. 31, 56, 57

7 U.S.C. § 518d(g)(3).......................................................................4, 5, 32

7 U.S.C. § 518d(i)........................................................................1, 14, 58

7 U.S.C. § 518d(j)......................................................................................1

v

7 U.S.C. § 518d(j) .................................................................................58

7 U.S.C. § 518d(j)(3) .............................................................................16

7 U.S.C. § 519a(b)(1)..............................................................................53

15 U.S.C. § 714b(c) .................................................................................1

26 U.S.C. § 5201 .....................................................................................11

26 U.S.C. § 5701(a) ................................................................................10

26 U.S.C. § 5701(b)(1)............................................................................33

26 U.S.C. § 5701(b)(2)............................................................................33

26 U.S.C. § 5701(e)..................................................................................33

26 U.S.C. § 5701(f)..................................................................................33

26 U.S.C. § 5701(g)..................................................................................33

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1294 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1345 .......................................................................................1

## Other Authorities

2A SUTHERLAND, STATUTORY CONSTRUCTION § 46.06 (4th ed. 1973)...................27

\* BLACK'S LAW DICTIONARY (9th ed. 2009) ..............................................30

Bruce Nelson, *Determination of the Administrator of the Farm Service Agency and Executive Vice President of the Commodity Credit Corporation Regarding the Current "Step A" and "Step B" Assessment Methods in the Tobacco Transition Payment Program* (Nov. 16, 2011)..............6

CALCULATION OF TOBACCO TRANSITION PAYMENT PROGRAM
ASSESSMENTS FOR EACH CLASS OF TOBACCO UNDER SECTION 625(c),
*available at* www.fsa.usda.gov/Internet/FSA_File/class?allocations/13.xls .......33

\* THE AMERICAN HERITAGE DICTIONARY (4th ed. 2006)............................................30

**Regulations**

7 C.F.R. § 1463 ........................................................................... vi, 9

7 C.F.R. § 1463.7 ................................................................... 2, 11, 20, 51

7 C.F.R. § 1463.7(c)................................................ 4, 10, 11, 24, 31, 32, 44, 51, 58

70 Fed. Reg. 7007 (Feb. 10, 2005) .....................................................9, 10

70 Fed. Reg. 7011 (Jun. 10, 2005)..........................................................54

76 Fed. Reg. 15859, 15864 (March 22, 2011)........................................53

76 Fed. Reg. 71934 (Nov. 21, 2011)........................................................18

\* Asterisks denote authorities principally relied upon.

# GLOSSARY OF ABBREVIATIONS

"FETRA" means the Fair and Equitable Tobacco Reform Act, 7 U.S.C. § 518.

"Per-Stick Rule" means 7 C.F.R. § 1463.7(c).

"Step B Regulation" means 7 C.F.R. § 1463.7, entitled "Division of class assessment to individual entities."

"USDA" means the United States Department of Agriculture.

"USDA Regulations" means USDA's regulations implementing FETRA, which are codified at 7 C.F.R., Part 1463.

## JURISDICTIONAL STATEMENT

**A.     The Basis For Agency And District Court Jurisdiction.**

In Case No. 06-1077 in the district court, the U.S. Department of Agriculture's ("USDA") jurisdiction was based on 7 U.S.C. § 518d(i) and the district court's jurisdiction was based on 7 U.S.C. § 518d(j) and 28 U.S.C. § 1331. In case No. 12-910, the United States invoked jurisdiction in the district court based on 28 U.S.C. §§ 1331 & 1345 and 15 U.S.C. § 714b(c).

**B.     The Basis For This Court's Jurisdiction.**

This Court has jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 1294.

**C.     Relevant Filing Dates.**

The district court's Memorandum and Order was filed on June 10, 2013 in both Case No. 06-1077 and Case No. 12-910 below, and Prime Time's notices of appeal were timely filed in both cases on July 2, 2013.

**D.     Prime Time Appeals From A Final Judgment Or Order In Both Of The Appeals Consolidated Here.**

This appeal is from a final order or judgment – the district court's Memorandum and Order filed June 10, 2013 – which disposed of all parties' claims in both Case No. 06-1077 and Case No. 12-910 below.

## STATEMENT OF ISSUES

1.  Whether the U.S. Department of Agriculture's ("USDA") regulation at 7 C.F.R. § 1463.7(c) (the "Per Stick Rule") is consistent with the express statutory provisions of the Fair and Equitable Tobacco Reform Act, 7 U.S.C. § 518 *et seq.*, ("FETRA").

2.  Whether USDA's Per-Stick Rule properly implements this Court's decision in the prior appeal, *Prime Time Int'l Co. v. Vilsack*, 599 F.3d 678 (2010).

3.  Whether USDA's so-called "Final Determination," which USDA issued after this Court remanded in *Prime Time,* a) articulates a permissible and appropriate explanation of how the Per-Stick Rule does give effect to FETRA's express terms, and b) is entitled to deference.

## STATUTES AND REGULATIONS

The cited statutes and regulations are set forth in full in the statutory

addendum attached hereto.

## STATEMENT OF THE CASE

This appeal presents a question of statutory interpretation:  whether the U.S. Department of Agriculture's ("USDA") method of calculating a monetary assessment on tobacco companies, and particularly cigar manufacturers like Appellant Prime Time, properly gives effect to all provisions of the governing statute, the Fair and Equitable Tobacco Reform Act, 7 U.S.C. § 518 *et seq.* ("FETRA").  Two FETRA provisions are relevant.  One, in subsection 518d(e)(1), requires the assessment to be "allocated on a pro rata basis among manufacturers . . . based on each manufacturer's . . . share of gross domestic volume."  The other FETRA provision, in subsection 518d(g)(3), provides that "the volumes of domestic sales shall be measured by – (A) in the case of cigarettes and cigars, the number of cigarettes and cigars."

Under regulations it issued in 2005, USDA allocates the FETRA assessment to cigar companies based exclusively on the number of cigars – *i.e.* on a "per-stick" basis.  *See* 7 C.F.R. § 1463.7.  Prime Time initiated its challenge to the Per-Stick Rule that same year.  Noting that the volume of tobacco varies significantly between large cigars and small cigars, Prime Time contended that the Per-Stick Rule – by allocating the FETRA assessment solely based on the number of cigars – wrongly ignored the requirement in subsection 518d(e)(1) that assessments be allocated "on a pro rata basis" according to "gross domestic volume."  Because

4

Prime Time primarily sold small cigars, which contain a much smaller volume of tobacco than large cigars, USDA's Per-Stick Rule imposed a much larger share of the FETRA assessments on Prime Time than would result if USDA honored subsection § 518d(e)(1)'s directive that the allocation be "pro rata" – which means proportionate – to tobacco volume.

USDA administratively rejected Prime Time's challenge and the district court affirmed, concluding that "USDA's interpretation of [FETRA] comports with Congressional intent and is entitled to deference." *Single Stick, Inc. v. Johanns,* 601 F. Supp. 2d 307, 310 (D.D.C. 2009).  In a prior appeal, this Court reversed and remanded.  *Prime Time,* 599 F.3d 678.  The Court rejected USDA's position, based on FETRA subsection 518d(g)(3), that the Per-Stick Rule was mandated by FETRA.  The Court recognized that the Per-Stick Rule "appeared to ignore the pro-rata-basis limitation Congress imposed on assessments . . . in subsection (e) [of 7 U.S.C. § 518d]." *Id.* at 683.  Referring to an alternative allocation method proposed by Prime Time, the Court observed that "Prime Time's interpretation suggests that there is at least one way to interpret FETRA's provisions consistently and in harmony, with none made superfluous or insignificant" *Id.*; *see* note 5, *infra* (describing Prime Time's allocation method).

5

On remand, USDA did not amend the Per-Stick Rule in any way.  Instead,

USDA issued a so-called "Final Determination," *see* JA__[AR 54-94],[1] in which

USDA purported to explain that its Per-Stick Rule actually does give proper effect

to FETRA's provisions – including both subsection 518d(e)(1) and subsection

518d(G)(3)(A).  USDA then applied the unchanged Per-Stick Rule to Prime Time

and demanded payment of nearly $10 million in disputed FETRA assessments.

Prime Time resumed its challenge by moving for summary judgment in its

original suit, claiming that the unchanged Per-Stick Rule ignores not only

FETRA's express terms – specifically, the "pro rata basis" requirement – but also

this Court's prior decision.  USDA opposed that motion on procedural and

substantive grounds, and the United States also filed a new suit seeking to recover

from Prime Time the FETRA assessments that USDA claimed based on the Per-

Stick Rule.  After the district court consolidated the two cases and denied Prime

Time's summary judgment motion in the first case without prejudice, the parties

filed cross-motions for summary judgment.

The district court again concluded that USDA's Per-Stick Rule was a proper

interpretation of FETRA.  The court therefore granted the United States' motion,

---

[1] Bruce Nelson, *Determination of the Administrator of the Farm Service Agency and Executive Vice President of the Commodity Credit Corporation Regarding the Current "Step A" and "Step B" Assessment Methods in the Tobacco Transition Payment Program* (Nov. 16, 2011), JA__[AR 54-95].

denied Prime Time's motion, and, applying the Per-Stick Rule, ordered Prime

Time to pay more than $11 million in disputed assessments. This appeal followed,

because given the differing volumes of tobacco in large and small cigars, the

unchanged Per-Stick Rule that the district court applied still does not give proper

effect to what this Court previously recognized as a "statutory mandate" – that

FETRA assessments be allocated on a "pro rata basis" according to "gross

domestic volume." *See* 599 F.3d at 683.

  The parties and the district court disagree over which of the two cases below

was the proper vehicle for addressing the substantive issues in dispute. Prime

Time noticed appeals in both cases, which appeals this Court consolidated, and

because the district court also had consolidated the two cases below, Prime Time

cites the record in both cases as appropriate.

# STATEMENT OF FACTS

## A.    Allocation of FETRA Assessments.

FETRA created the Tobacco Transition Payment Program (the "Transition Program").  In order to fund tobacco transition payments to eligible recipients, FETRA authorized USDA to levy and collect monetary assessments from tobacco companies on a quarterly basis during each of the federal fiscal years 2005 through 2014.  *See* 7 U.S.C. § 518d(b).

FETRA placed all tobacco products into one of six classes – cigarettes, cigars, snuff, "roll your own," chewing tobacco, and pipe tobacco.  *See* 7 U.S.C. § 518d(c)(1).  FETRA directs that USDA, each year, apportion the total annual Transition Program obligation among the classes of tobacco products based on each class's respective share of "gross domestic volume" of tobacco sold, as defined at 7 U.S.C. § 518d(a)(2).  This is known as "Step A" of the assessment process.  *See* 7 U.S.C. § 518d(c)(2) (Annually, USDA "shall . . . adjust the [Step A] percentage [for] each class of tobacco product . . . to reflect changes in the share of gross domestic volume held by that class of tobacco product.").  The initial (first-year) Step A allocation was done by Congress, *see* 7 U.S.C. 518d(c)(1), based on excise tax data for each tobacco product class.  *See* JA__[AR57-61].  USDA has used this same Step A allocation method in subsequent years.  JA__[AR61-63].

FETRA also provides that the total annual Transition Program obligation attributable to each class of tobacco products in Step A shall be allocated among manufacturers and importers of products in that class based on the "gross domestic volume" of tobacco sold by each manufacturer or importer. *See* 7 U.S.C. § 518d(e)(1). This is known as "Step B" of the assessment process.

This appeal involves Step B of the FETRA assessment process. Regarding Step B, FETRA provides in a subsection 518d(e), entitled "Allocation of assessment within each class of tobacco product," as follows (emphasis added):

> **(1) Pro rata basis.**
>
> The assessment for each class of tobacco product specified in subsection (c)(1) *shall be allocated on a pro rata basis* among manufacturers and importers *based on each manufacturer's* or importer's *share of gross domestic volume*.
>
> **(2) Limitation.**
>
> No manufacturer or importer shall be required to pay an assessment that is based on a share that is in excess of the manufacturer's or importer's share of domestic volume.

In February 2005, USDA issued regulations pertaining to the Transition Program, including provisions pertaining to annual assessments, *see* 70 Fed. Reg. 7007 (Feb. 10, 2005), which regulations have been codified at 7 C.F.R., Part 1463 (the "USDA Regulations"). In promulgating the USDA Regulations, USDA acknowledged that cigars, although sold in sticks like cigarettes, contain different amounts of tobacco, and are divided into separate classes of large cigars and small

9

cigars for federal tobacco excise tax purposes. *See* 70 Fed. Reg. 7007, 7008 (Feb. 10, 2005) (Table 1); 26 U.S.C. § 5701(a) (imposing different excise tax rates on large and small cigars).

Despite FETRA's mandate that the total annual FETRA assessment attributable (in Step A) to each class of tobacco products shall be allocated (in Step B) among manufacturers and importers in that class on a "pro rata basis" according to each company's "share of gross domestic volume," the USDA Regulations provide in 7 C.F.R. § 1463.7(c) (the "Per-Stick Rule") that the total annual assessment for the cigar class shall be allocated among cigar companies based solely on the "number" of cigars – *i.e.,* on a "per-stick" basis, without regard to the differing volumes of tobacco in large and small cigars. As this Court noted in the prior appeal, USDA sought to justify the Per-Stick Rule at that time by pointing to subsection 518d(g)(3)(A) of FETRA, which provides that "[f]or purposes of the calculations under this subsection, . . . the volumes of domestic sales shall be measured by – (A) in the case of cigarettes and cigars, the number of cigarettes and cigars." *See Prime Time*, 599 F.3d at 683 ("USDA construes section 518d(g)(3)(A) of FETRA to mandate the per-stick method.").

The USDA Regulations, in imposing the Per-Stick Rule, do not rely upon the term "volume of domestic sales." Instead, for all classes of tobacco products the USDA Regulations require that the Step B allocation be based on each

company's "adjusted market share," a term not contained in FETRA.  Specifically,

7 C.F.R. § 1463.7, entitled "Division of class assessment to individual entities"

(the "Step B Regulation"), provides as follows in subsection (a):

> The amount of the assessment for each class of tobacco to be paid by each domestic manufacturer and importer of tobacco products will be determined by multiplying:
>
>> (1)  With respect to each class of tobacco, the adjusted market share of such manufacturer or importer; by
>>
>> (2) The total amount of the assessment for that class of tobacco for the calendar year.

For all classes of tobacco products except cigars, the Step B Regulation

defines "adjusted market share" as a company's share of "excise taxes paid" –

referring to the separate federal excise tax on tobacco products.  *See* 26 U.S.C.

§ 5201.  By contrast, the Step B Regulation uniquely singles out cigars for "per-

stick" allocation:

> In determining the adjusted market share of each manufacturer or importer of a class of tobacco products, *except for cigars*, [USDA] will determine to the fourth decimal place an entity's share of excise taxes paid of that class of tobacco product during the immediately prior calendar quarter. *With respect to cigars*, [USDA] will determine the adjusted market share for each manufacture or importer of a class of tobacco products based on the number of such products.

7 C.F.R. § 1463.7(c).

**B.    FETRA Assessments Levied Against Prime Time.**

Prime Time manufactures and imports cigars, including both large and small cigars.  JA__, ___, __,[Case No. 06-1077, Dkt. # 43 ("LR7 FS") ¶¶ 1, 25].[2]  USDA has issued FETRA assessment invoices to Prime Time for each calendar quarter beginning with the fourth quarter of 2004 to the present.  *See* JA__ [LR7 FS ¶ 23]; JA ___[AR272].[3]  Such invoices have been dated March 1, June 1, September 1 and December 1 of each respective year, and in each instance the invoices have assessed Prime Time an amount for the three-month period ending two months prior to the date of the invoice.  *See* JA__[AR289-453]; JA __ [LR7 FS ¶ 23]; JA [AR272] (chart listing cigar assessments of Prime Time).  All of the assessment invoices USDA has issued to Prime Time have assessed Prime Time a portion of the total annual FETRA assessment attributable to cigars which USDA has calculated on a "per-stick" basis, in reliance on the Per-Stick Rule.  *See* JA__ [LR7 FS ¶ 24].[4]

Throughout the period during which FETRA provides for assessments against manufacturers of tobacco products, the cigars manufactured by Prime Time

---

[2]For convenience we refer to the company as Prime Time throughout this brief even though the company was named Single Stick, Inc. when this dispute arose and until it changed its name to Prime Time.

[3] The record only contains invoices through the June 30, 2012 quarter.

[4] Prime Time also sells other tobacco products subject to FETRA assessments. Those are not at issue here.

12

have been predominantly small cigars.  JA__ [LR7 FS ¶¶ 25 & 26].  During the

early years of that period, through 2008, Prime Time's cigar product mix was

weighted very heavily (and at times almost exclusively) in favor of small cigars.

JA__[LR7 FS ¶ 25].  Accordingly, the USDA assessments of Prime Time under

USDA's Per-Stick Rule have resulted in assessment amounts far in excess of the

"pro rata share" of gross domestic volume of tobacco contained in Prime Time's

small cigars in comparison to the gross domestic volume of tobacco contained in

all cigars (*i.e.,* including large cigars).  *See* JA__ [LR7 FS ¶ 27].

## C.    <u>Proceedings Below – Prior Litigation.</u>

In 2005, Prime Time challenged USDA's first three Transition Program

assessments.  JA__[AR96-107].  USDA's administrative decision in 2006

acknowledged that Prime Time's position "may be philosophically well founded"

to argue the inequity of assessing small cigars as if each stick contained the same

volume of tobacco a large cigar.  JA__ [AR258].  Nonetheless, USDA's 2006

decision rejected Prime Time's challenge, including the contention that USDA's

Per-Stick Rule for cigars fails to give proper effect to FETRA's requirement that

assessments be allocated on a "pro rata basis" according to each manufacturer's or

importer's "share of gross domestic volume."  JA__ [AR264-65]; JA __ [LR7 FS ¶

30].  Since initiating that administrative challenge, Prime Time has challenged on

the same basis each subsequent FETRA assessment invoice USDA has issued to

13

Prime Time.  JA__[LR7 FS ¶ 29]; JA__ [Dkt. #43, Decl. of John T. Wertheim

("Wertheim Decl.") Ex. 2]; *see also* 7 U.S.C. § 518d(i) (FETRA administrative

challenge process).

        As noted above, the district court upheld USDA's 2006 decision, concluding

that "USDA's interpretation of [FETRA] comports with Congressional intent and

is entitled to deference," *Single Stick,* 601 F. Supp. 2d at 314, but this Court

reversed, *Prime Time*, 599 F.3d 678.  This Court rejected USDA's position that the

Per-Stick Rule complied with FETRA's language and intent, and indeed was

mandated by FETRA.  *Id.* at 683.  The Court recognized that USDA's Per-Stick

Rule allocates to individual cigar companies a portion of the total FETRA

assessment attributable to cigar companies "solely by the number" of cigars,

"without differentiating between large and small cigars."  *Id*. at 681.  The Court

thus concluded that the Per-Stick Rule "appeared to ignore the pro-rata-basis

limitation Congress imposed on assessments within a tobacco class in subsection

(e) [of 7 U.S.C. § 518d]."  *Id.*  Underscoring that point, the Court explained that

"the text and structure of the statute titled Fair and Equitable Tobacco Reform Act

suggests an easy counting method for cigarettes and cigars" – an obvious reference

to the per-stick method – "may not override a statutory mandate that assessments

be 'allocated on a pro rata basis.'"  *Id.*

14

In those prior proceedings Prime Time, both in the district court and in this Court, proffered an alternative Step B allocation method that gave effect both to the "pro rata basis" requirement of subsection 518d(e)(1) and to the language in subsection 518d(g)(3)(A) referring to the "number" of cigars. *See* 599 F.3d 682 (describing Prime Time's proposed allocation method).[5]  This Court observed that "Prime Time's interpretation suggests that there is at least one way to interpret FETRA's provisions consistently and in harmony, with none made superfluous or insignificant." *Id.* at 683.  In March 2010, this Court "reverse[d] and remand[ed] to the district court with instructions to remand Prime Time's FETRA claims to the USDA for further proceedings," *id*., which the district court did in June 2010, JA___ [Dkt. # 22].

**D.**     **Proceedings Below – Current Litigation.**

More than a year later (September 2011), USDA had not instituted any further proceedings on Prime Time's FETRA claims.  However, on March 22, 2011, USDA published in the Federal Register a "Request for comments" on USDA's Step B method of allocating the FETRA assessment among cigar companies.  JA__[AR11].  That request stated that the per-stick allocation method

---

[5] Prime Time's method would first divide cigars into large and small volume categories based on excise tax data, and then allocate the FETRA assessment within each category based on sticks.  *See* JA__[LR 7 FS ¶ 37].

for cigars was "under review," JA__[AR11], but "any change would be published in a subsequent rulemaking document." JA__ [AR16].

Given USDA's failure on remand to address Prime Time's "FETRA claims," as this Court had directed, *see* 599 F.3d at 683, in October 2011 Prime Time moved for summary judgment in its original suit, reiterating that the Per-Stick Rule gave no effect to FETRA's "pro rata basis" mandate, and adding that the Rule also failed to properly implement this Court's prior decision.  JA__ [Dkt. #29].  Prime Time explained in its motion that FETRA, in 7 U.S.C. § 518d(j)(3), provided express authority for the district court to decide Prime Time's challenge to the FETRA assessments levied against it.  That subsection, entitled "Excessive assessments," states:

> The Court shall restrain collection of the excessive portion of any assessment or order a refund of excessive assessments already paid, along with interest, . . . if it finds that the Secretary's [*i.e.,* USDA's] determination is not supported by a preponderance of the information available to [USDA].

By its terms, this subsection authorizes the district court to determine what portion of "any assessment" is "excessive," and then to restrain or order a refund of such excessive portions, if the court finds that USDA's determination is unsupported by available information.

Prime Time contended that the determination USDA made in its 2006 final decision (and applied to all subsequent FETRA assessment invoices issued to

Prime Time) was not supported by the information available to USDA, which at the time of Prime Time's summary judgment motion included, very importantly, this Court's prior decision in *Prime Time*.  Prime Time's renewed summary judgment motion asked the district court to apply Prime Time's alternative Step B allocation method, and was supported by a detailed declaration including schedules calculating the proper quarterly assessment amounts assuming the court adopted Prime Time's alternate Step B method.  *See* JA__ [LR7 FS ¶ 45-50].  The difference between the FETRA assessments levied against Prime Time pursuant to USDA's Per-Stick Rule, and the assessments that Prime Time would owe under its proposed alternative Step B allocation method, was more than $12 million at the time of Prime Time's summary judgment motion.  *See* JA__[11/17/11 LR7 FS, Dkt. #29-2, ¶ 35 & attach. 4].

In November 2011, two days before the due date for USDA's response to Prime Time's summary judgment motion, USDA issued its so-called "Final Determination" – for its full title, *see* note 1, *supra*.  In that document USDA acknowledged this Court's previous *Prime Time* decision, but explained USDA's view that that the Per-Stick Rule does give proper effect to all of FETRA's provisions.  JA__[AR63-68].  USDA also asserted it "can think of no better reading of the statute" than the Per-Stick Rule.  JA__ [AR84].  Therefore, "USDA reject[ed] Prime Time's plea for a different interpretation."  JA__[AR73].  USDA

17

did not publish the Final Determination in the Federal Register, but only a "notice of [its] availability." *See* 76 Fed. Reg. 71934 (Nov. 21, 2011).

USDA then filed its summary judgment opposition, which attached the Final Determination USDA had just issued and advanced both procedural and substantive arguments. USDA contended the district court lacked jurisdiction because Prime Time's original suit had concluded, and alternatively that Prime Time's renewed challenge was not ripe because USDA had not yet applied the Final Determination to Prime Time's claims. Substantively USDA contended that, for reasons explained in the Final Determination, the Per-Stick Rule "is a reasonable reading of FETRA." JA__ [Dkt. #31 p. 10].

In January 2012 USDA, applying its unchanged Per-Stick Rule, demanded payment from Prime Time of all unpaid assessment amounts as originally invoiced by USDA. JA__ [AR118, 122]. In February and again in May 2012, more than two years after this Court's prior *Prime Time* decision, Prime Time requested the district court to expedite consideration of Prime Time's pending summary judgment motion. JA__[ Dkt. #36 &40].[6] USDA opposed those requests. JA__[ Dkt. #38 & 41].

---

[6] Those motions explained that delay in resolving this dispute was causing extreme hardship to Prime Time, because its financial statements reflect material financial differences which show the company to be far less creditworthy than it would be if adjustments to the FETRA assessments that Prime Time maintains are necessary were made.

In June 2012, the United States, acting on behalf of USDA, filed a new suit seeking to enforce the unchanged Per-Stick Rule against Prime Time and to collect more than $11 million in disputed FETRA assessments.  JA__[Case No. 12-910, Dkt. #1].  The government filed that suit as a "related case" to Prime Time's original suit, JA__[Case No. 12-910, Dkt. #2], and both cases were assigned to Judge Roberts.  Several months later the government moved for summary judgment in its new case, contending that USDA's construction of FETRA in the Final Determination is entitled to deference and establishes that the Per-Stick Rule does give proper effect to all FETRA's provisions, including the "pro rata basis" requirement of subsection 518d(e)(1), JA__[Case No. 12-910, Dkt. #13 pp. 15-19].

Judge Roberts thereafter denied Prime Time's motion for summary judgment in its original suit without prejudice, consolidated the two cases, directed that the government's new suit be administratively closed, and ordered that all future filings be made in Prime Time's original suit.  JA__[ Dkt. #42].  Prime Time then opposed the summary judgment motion the government had filed in its new suit and cross-moved for summary judgment, reiterating the same arguments made in its previous motion.  Subsequently both cases were transferred to Judge Lamberth,  JA__[ Dkt. #48], who issued the decision now under review.

**E.    The District Court Decision Under Review.**

The district court again upheld the Per-Stick Rule as an appropriate

interpretation of FETRA that gives proper effect to all FETRA provisions.  JA__

[Dkt. #51, pp. 25-26].  The court relied on what it thought was USDA's

"rulemaking" leading to the Final Interpretation, JA__[ Dkt. #51, p. 19], and

deferred to USDA's determination in that document to re-affirm the Per-Stick

Rule, JA__[ Dkt. #51, p.  17].

The court rejected Prime Time's contention that, because the Per-Stick Rule

ignores FETRA's express "pro rata basis" mandate, the Rule is invalid under

"*Chevron* Step 1."  *See Chevron U.S.A., Inc. v Natural Res. Def. Council ,* 467

U.S. 837 (1984).  Instead, the court asserted that this Court's prior *Prime Time*

decision found an "ambiguity" in FETRA that warranted deference to USDA's

Final Interpretation under *Chevron* Step 2.  JA__[Dkt. #51, p. 28].  The court did

not, however, identify that purported statutory ambiguity.  Nor did the court

address, in any manner, USDA's Step B Regulation at 7 C.F.R. § 1463.7.

The district court also rejected Prime Time's alternative contention that even

under *Chevron* Step 2, and regardless of any deference due USDA, the Final

Interpretation is invalid because it is not a "permissible" interpretation of FETRA

and is internally inconsistent and therefore arbitrary.  The court did not address

Prime Time's contention that the Final Interpretation is entitled to no deference for

20

the additional reasons that it was not the product of any actual rulemaking, it was first developed in the course of this litigation to support USDA's litigation position and it advances USDA's financial interest.

Having found USDA's Per-Stick Rule valid, the court granted the government's summary judgment motion, denied Prime Time's motion, and directed entry of judgment against Prime Time for more than $11 million in disputed FETRA assessments.  Contrary to Judge Roberts, Judge Lamberth also administratively closed Prime Time's original suit, reopened the government's new suit and deemed the parties' summary judgment cross-motions filed in that new suit.  JA__[Dkt. #51, p. 1 n.1].

# SUMMARY OF ARGUMENT

USDA's Per-Stick Rule is invalid under *Chevron* Step 1, because the rule fails to give effect to the express and unambiguous requirement in subsection 518d(e)(1) of FETRA that "[t]he assessment for each class of tobacco product . . . shall be allocated on a pro rata basis among [companies] based on each [company]'s share of gross domestic volume." 7 U.S.C. § 518d(e)(1). Given the differing volume of tobacco in large and small cigars, the Per-Stick Rule fails to allocate the FETRA assessment among cigar companies on a basis that is "pro rata" to tobacco "volume." Instead, the Per-Stick Rule by definition allocates the FETRA assessment among cigar companies solely based on the "number of  . . . cigars," which is language in a different subsection of FETRA – 518d(g)(3)(A). In *Prime Time*, this Court recognized that that language did not mandate the Per-Stick Rule, and in fact had a meaning different from subsection 518d(e)(1), which imposes the "pro rata basis" requirement. USDA is required to give effect to all of FETRA's statutory requirements, and the Per-Stick rule fails to do so.

The Per-Stick Rule should be invalidated under *Chevron* Step 1 because, although in FETRA Congress may not have prescribed a detailed Step B allocation method for cigar companies, Congress did confine USDA's "range of interpretive discretion" by imposing the express "pro rata basis" requirement. *See Village of Barrington, Illinois v. Surface Transp. Bd.,* 636 F.3d 650, 659 (D.C. Cir. 2011).

22

*Prime Time* recognized that the "pro rata basis" requirement is a "statutory mandate," 599 F.3d at 683, and under *Chevron* Step 1, "that is the end of the matter." *Chevron*, 467 U.S. at 842. The Per-Stick Rule is not entitled to *Chevron* deference. USDA must comply with the statute.

The district court wrongly applied a *Chevron* Step 2 analysis, because it mistakenly concluded that this Court in *Prime Time* had identified an "ambiguity" in FETRA that permitted USDA to reaffirm the Per-Stick Rule even though the Rule disregards the statutory "pro rata basis" mandate. This Court's remand in *Prime Time* was not based on such an ambiguity – and the district court did not identify one. Instead, this Court remanded because it was not willing to say that Prime Time's proposed alternative Step B allocation method for cigars was the only way "to interpret FETRA's provisions consistently and in harmony." *See* 599 F.3d at 683. The Court thus gave USDA the opportunity to consider other ways to do so. The Court nevertheless made clear in *Prime Time* that on remand USDA must interpret and apply FETRA in a way that gives effect to the express "pro rata basis" mandate.

USDA's Per-Stick Rule would have to be invalidated even if it were appropriate to apply *Chevron* Step 2. Under that analysis, courts only defer to agency interpretations of a statute that are permissible, reasoned and reasonable. The Per-Stick Rule is none of those. It is not a permissible construction of FETRA

23

because it gives no effect to the "pro rata basis" requirement of subsection 518d(e)(1). USDA's Final Interpretation does not change that fact.

The Per-Stick Rule is neither reasoned nor reasonable because USDA's explanation in the Final Interpretation of how the Rule actually does give proper effect to all FETRA provisions is internally inconsistent "and therefore arbitrary." *See Bus. Roundtable v. SEC*, 647 F.3d 1144, 1153 (D.C. Cir. 2011). The Final Interpretation's explanation never addresses the actual language of the Per-Stick Rule at 7 C.F.R. § 1463.7(c) – language that does not mention, and has no discernible relationship to, the "pro rata basis" requirement. The Final Interpretation also is entitled to no deference because it is not the product of a rulemaking but instead was first developed in the course of this litigation, to advance USDA's position.

Tellingly, the district court upheld USDA's Per-Stick Rule on grounds quite different than those advanced by USDA in the Final Interpretation. But the district court's explanation of how the Per-Stick Rule gives effect to all FETRA provisions never addresses subsection 518d(e)(1), which imposes the "pro rata basis" requirement. The district court's explanation is no better than USDA's.

The Court therefore should declare USDA's Per-Stick Rule invalid, reverse the district court decision and vacate the monetary judgment against Prime Time. Another remand to USDA would be futile, because USDA "can think of no better

24

reading of the statute than" the Per-Stick Rule, JA__[AR84].  Instead, and given

that this Court already determined in *Prime Time* that Prime Time's proposed Step

B allocation method for cigar companies "interpret[s] FETRA's provisions

consistently and in harmony," *see* 599 F.3d 683, the Court should adopt Prime

Time's method as a matter of law and then direct the district court to proceed

determine Prime Time's liability for FETRA assessments on that basis.

## STANDING

Prime Time has standing to challenge USDA's Per-Stick Rule as a result of

both a) USDA's application of that Rule in its 2006 administrative decision

denying Prime Time's challenge to the initial FETRA assessment levied against it,

J__[AR255, 264], and b) USDA's January 2012 decision, based on the Per-Stick

Rule, demanding that Prime Time pay millions of dollars in disputed FETRA

assessments, JA__[AR118].  *See, e.g., Americans for Safe Access v. Drug

Enforcement Admin*., 206 F.3d 438, 440 (D.C. Cir. 2013).

The district court's Order of June 10, 2013, finally resolved both cases now

here on appeal.   Although the parties disagreed below regarding which case was

the proper vehicle for resolving the disputed substantive issues, the district court

did not address that issue.  For that reason, and because the two cases were

consolidated below and are consolidated here, this Court also need not address or

resolve the procedural issue.[7]

_____

[7] Regardless whether the district court is correct that judicial review of the government's claims against Prime Time is based on the agency's record, *see* JA__[ Dkt. #51 p. 10], the judicial review provision of FETRA, 7 U.S.C. § 518 (j), does not limit decision-making on Prime Time's challenges to FETRA assessments to any specified "administrative record." Instead, it requires the court to adjust assessment amounts that are not supported by "the information available to [USDA]." *See also Prime Time*, 599 F.3d at 683-85. The information and data accompanying Prime Time's summary judgment motions below was "available" to USDA when it decided on remand not to adjust Prime Time's assessments. Indeed, even apart from the broad "information available" standard of FETRA's judicial review provision, the information and data supporting Prime Time's motions should have been included in the administrative record. *See, e.g., American Wild Horse Preservation Campaign v. Salazar*, 859 F. Supp. 2d 33, 43-44 (D.D.C. 2012) ("Expert Declarations should have been considered by" agency "where it is evident that the agency was aware of and in possession of [them]"); *Fund for Animals v. Williams,* 391 F. Supp. 2d 191, 198 (D.D.C. 2005) (Agency improperly excluded adverse information from administrative record where "documents at issue (1) were known to the agency at the time it made its decision, (2) 'are directly related to the decision,' and (3) 'are adverse to the agency's decision.'" (citation omitted). Nonetheless, because this appeal centers on a purely legal question, the scope of the record below is largely immaterial.

## ARGUMENT

I.   **USDA's Per-Stick Rule Is Invalid Under *Chevron* Step 1.**

   A.   **USDA's Unchanged Per-Stick Rule is Contrary To FETRA's Express Statutory Language.**

Under a proper construction of FETRA, USDA's Per-Stick Rule is not required by the statute, as USDA wrongly contended in the previous appeal. *See Prime Time,* 599 F.3d at 683 ("USDA's present interpretation of FETRA is not mandated by the plain text of FETRA."). The Per-Stick Rule is actually *inconsistent* with the statutory language because, as this Court also recognized in *Prime Time,* it gives no effect to "the pro-rata-basis limitation Congress imposed on assessments within a tobacco class in subsection (e) [of 7 U.S.C. § 518d]." *See id.*

"It is [ ] a fundamental principal of statutory construction that "'effect must be given, if possible, to every word, clause and sentence of a statute . . . so that no part will be inoperative or superfluous, void or insignificant.'" *In re Surface Mining Regulation Litig.,* 627 F.2d 1346, 1362 (D.C. Cir. 1980) (holding agency's interim regulation interpreting the Surface Mining Act invalid because it rendered one of the three phrases in the "grandfather clause" provision of the Act "inoperative" and "superfluous") (quoting 2A SUTHERLAND, STATUTORY CONSTRUCTION § 46.06 (4th ed. 1973) (internal quotations omitted)); *see Corely v. United States,* 556 U.S. 303, 314 (2009) ("The fundamental problem with the

27

Government's reading of § 3501 is that it renders § 3501(c) nonsensical and superfluous."); *Norfolk & Western Ry. Co. v. United States*, 768 F.2d 373, 379 (D.C. Cir. 1985) (rejecting ICC's interpretation of a statutory section because it "ascribes no purpose to the second sentence.").

This basic canon of statutory interpretation holds particular weight when a federal agency is called upon to implement a Congressional enactment.  That is because, under the familiar two-step analytic framework of *Chevron*, 467 U.S. 837, the fundamental requirement at Step 1 is for the agency to give effect to the express statutory terms.  *Id.* at 842-43.  As this Court has explained:

> "A basic principle of administrative law is that agencies must comply with the requirements and limits contained in the text of applicable statutes.  Courts afford "*Chevron* deference" to an agency's authoritative and reasonable interpretation of an ambiguous statutory provision.  But we give no deference to an agency interpretation that fails to comport with the plain statutory language.  The precise words of the statutory text matter."

*City of Anaheim v. FERC*, 558 F.3d 521 (D.C. Cir. 2009).  The Court acknowledged in *City of Anaheim* that "FERC posit[ed] a number of different theories to overcome the text of [the statute]," but determined that "[i]n the end as in the beginning, the plain language of [the statute] controls."  *Id.* at 524-25 (citing *MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 229 (1994)) ("an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear"); *see Alabama Power Co. v. EPA*, 40 F.3d 450,

28

455 (D.C. Cir. 1994) (rejecting EPA's argument that the statutory term "low NO$_x$

burner technology" included "both burners and overfire air," because, applying

*Chevron* Step 1 analysis, the term "low NO$_x$ burner technology" is an

"unambiguous reference" to low nitrogen oxide burners only).

Here, similarly, USDA's interpretation of FETRA set forth in the Per-Stick

Rule cannot survive *Chevron* Step 1 analysis because, as this Court already

recognized in *Prime Time*, the Per-Stick Rule does not "comply with the

requirements and limits contained in the text of" FETRA. *See City of Anaheim*,

558 F.3d at 521. The plain language of subsection 518d(e)(1) requires that "[t]he

assessment for each class of tobacco product [*e.g.,* cigars] shall be allocated on a

*pro rata basis* among manufacturers and importers *based on* each manufacturer's

or importer's share of *gross domestic volume*." *See* 7 U.S.C. § 518d(e)(1)

(emphasis added). USDA's Per-Stick Rule, which allocates to individual cigar

companies a portion of the total FETRA assessment attributable to the cigar class

on a per-stick basis – without regard to the differing volumes of tobacco in large

and small cigars – gives no effect to the statutory term "pro rata basis" or the

statutory phrase "based on . . . share of gross domestic volume." That is the central

import of this Court's decision in *Prime Time*:

> As interpreted by USDA, it is irrelevant that one large cigar consumes
> far more tobacco than a small cigar, and so accounts for a far larger
> segment of the market than its per-stick contribution would indicate.
> Yet the text and structure of the statute . . . suggests [that] an easy

counting method for cigarettes and cigars may not override a *statutory mandate* that assessments be 'allocated on a pro rata basis' within each class of tobacco product.

*See* 599 F.3d at 683 (emphasis added).

As this passage makes clear, the "pro rata basis" requirement of 7 U.S.C. § 518d(e) is a "statutory mandate" binding on USDA. According to the American Heritage Dictionary, "pro rata" means "[i]n proportion." THE AMERICAN HERITAGE DICTIONARY 1407 (4th ed. 2006). Black's Law Dictionary similarly defines "pro rata" as "proportionately." BLACK'S LAW DICTIONARY, pro-rata (9th ed. 2009). FETRA defines "gross domestic volume" as the "volume of tobacco products" subject to the separate federal excise tax – the volume "removed" in excise tax parlance. *See* 7 U.S.C. § 518d(a)(3). And the American Heritage Dictionary defines "volume" as "the amount of space occupied by a three-dimensional object or region of space, expressed in cubic units." THE AMERICAN HERITAGE DICTIONARY 1928 (4th ed. 2006).

Accordingly, a "pro rata basis" allocation, based on each cigar manufacturer's "share of gross domestic volume," cannot be one that measures cigars by sticks – one stick per cigar – *regardless* of the varying volumes of tobacco in different cigars. The allocation method must, in order to be "pro rata" or "proportionate" to volume, *account for* the differing tobacco volumes between large and small cigars. By definition, USDA's Per-Stick Rule does not do that.

30

Further, contrary to the dictionary definition of the statutory term "volume," the Per-Stick Rule allocates the FETRA assessment among cigar companies at Step B with no regard to "the amount of space occupied" by the tobacco in any particular cigar. In *Prime Time*, this Court criticized the Per-Stick Rule on precisely that ground. *See* 599 F. 3d at 683 ("As interpreted by USDA, it is irrelevant that one large cigar consumes far more tobacco than a small cigar, and so accounts for a far larger segment of the market than its per-stick contribution would indicate."). *See generally Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself.").

Therefore, under *Chevron* Step 1, USDA's Per-Stick Rule set forth in 7 C.F.R. § 1463.7(c) is invalid as contrary to FETRA's express "statutory mandate." Given the differing amounts of tobacco in large and small cigars, the Per-Stick Rule fails to give effect to the "pro rata basis" requirement of subsection 518d(e)(1). And because Prime Time's product mix has been weighted very heavily in favor of small cigars, which contain much less tobacco, the Per-Stick Rule also violates subsection 518d(e)(2) of FETRA: "No manufacturer. . . shall be required to pay an assessment that is based on a share that is in excess of the manufacturer's . . .share of domestic volume."

31

It is no answer to say that the Per-Stick Rule is justified by subsection 518d(g)(3)(A) of FETRA, the provision stating that the "volume of domestic sales" by a cigar company should be "measured by . . . the number of . . . cigars."  USDA previously made that argument to this Court, and the Court rejected it.  *See Prime Time,* 599 F.3d at 682.  As the Court explained there, "[u]nder FETRA, the 'volume of domestic sales' and 'market share' [*i.e.*, the terms used in subsection 518d(g)(3)] are not synonymous with 'gross domestic volume,'" *id.* at 683, the term used in subsection 518d(e)(1), which imposes the "pro rata basis" requirement.  To survive *Chevron* Step 1 scrutiny, USDA's interpretation of FETRA, as applied to cigar manufacturers and importers, must give effect to *all* the relevant statutory provisions.  This Court has recognized there is "at least one way" to do that – Prime Time's proposal.  *Id.*  USDA's Per-Stick Rule, however, does not give effect to FETRA's "pro rata basis" mandate.

It is important to recognize that USDA's Step B allocation of the FETRA assessment to companies in the five covered tobacco classes other than cigars *is* proportionate – that is, "pro rata" – to the volume of tobacco attributable to each company in those classes.  Pursuant to the Step B Regulation, 7 C.F.R. § 1463.7(c), in performing the Step B allocation for all those other classes of tobacco products, USDA uses "excise taxes paid" as the basis for allocating the overall class assessment to individual companies.  Excise taxes for four of those other classes of

tobacco products (snuff, chewing tobacco, pipe tobacco and roll-your-own) are assessed on the basis of tobacco weight. *See* 26 U.S.C. § 5701(e), (f) & (g). Tobacco weight is proportionate to, and thus a reasonable proxy for, tobacco volume. For cigarettes, the federal excise tax is imposed based on stick count, *see id.* § 5701(b)(1), but unlike cigars, cigarettes are uniform in size and weight – and thus, tobacco volume. Therefore, using "excise taxes paid" based on cigarette stick count as a basis for the FETRA Step B allocation among cigarette companies, as USDA does pursuant to the Step B Regulation, also results in an allocation that is proportionate (*i.e,.* "pro rata") to the volume of tobacco in the uniformly-sized cigarettes.[8]

USDA thus knows how to comply with FETRA's "pro rata basis" mandate, it has simply refused to do so for cigars. Instead, cigar companies like Prime Time are uniquely singled out by USDA, pursuant to the Per-Stick Rule, for an allocation of the FETRA assessment that is *not* proportionate to the differing volumes of tobacco in the large and small cigars they produce. There is no basis in the statute for this disparate treatment. Subsection 518d(e)(1) of FETRA, which

_____

[8] The text addresses so-called "small" cigarettes. The Internal Revenue Code also has provisions for "large" cigarettes, *see* 26 U.S.C. § 5701(b)(2), but large cigarettes have not been sold for years by any company, as reflected by the absence of any entry for large cigarettes on the schedule of tobacco excise taxes paid available on USDA's website. *See* CALCULATION OF TOBACCO TRANSITION PAYMENT PROGRAM ASSESSMENTS FOR EACH CLASS OF TOBACCO UNDER SECTION 625(c), *available at* www.fsa.usda.gov/Internet/FSA_File/class?allocations/13.xls.

sets forth the "pro rata basis" mandate, applies to all classes of tobacco products subject to FETRA assessments.  Unlike USDA's Per-Stick Rule, the statutory text contains no exception for cigar companies.

### B. This Court Remanded So USDA Could Give Effect To What The Court Recognized Is FETRA's "Statutory Mandate," Not For USDA To Reaffirm The Discredited Per-Stick Rule.

The district court's determination to apply *Chevron* Step 2 analysis rested on a misinterpretation of this Court's *Prime Time* decision.  The district court wrongly concluded that this Court in *Prime Time* identified an "ambiguity" in FETRA's language that gave USDA the option to retain the Per-Stick Rule.  *See* JA__ [Dkt. #51 pp. 17-18 ] ("Nothing in the Circuit's opinion prohibited USDA from deciding . . . that its prior  per-stick method is still the best interpretation of the ambiguous statutory language."); JA__[Dkt. #51 p. 2] (referring to FETRA's "ambiguous statutory language").  Based on that premise, the court applied *Chevron* Step 2 and proceeded to find that USDA's interpretation of FETRA reflected in the Per-Stick Rule, and now explained in USDA's Final Interpretation, is a "reasonable" construction of the statute entitled to deference.  *See* JA __ [Dkt. #51 pp. 25-30].

The district court's premise, that in *Prime Time* the Court found statutory ambiguity that now justifies the same Per-Stick Rule that the Court criticized in that decision, is illogical and wrong.  The district court never identifies the supposed "ambiguity" found by this Court, and this Court's *Prime Time* decision

also did not identify an ambiguity in FETRA's statutory language. Rather, the district court's "ambiguity" conclusion rests entirely on this Court's statement that "FETRA does not appear to be susceptible of only a single interpretation." *See* 599 F.3d at 683; *see* JA__[Dkt. #51 p. 14].

In context, however, and properly understood, that statement did not allow USDA on remand to re-affirm its Per-Stick Rule, nor did that statement allow the district court to proceed beyond *Chevron* Step 1. The critical passage in *Prime Time* explained that USDA's Per-Stick Rule is not consistent with FETRA's explicit statutory terms:

> Most critically, USDA's interpretation appears to ignore the pro-rata-basis limitation Congress imposed on assessments within a tobacco class in subsection (e) [of 7 U.S.C. § 518d]. As interpreted by USDA, it is irrelevant that one large cigar consumes far more tobacco than a small cigar, and so accounts for a far larger segment of the market than its per stick contribution would indicate. Yet the text and structure of the statute titled the Fair and Equitable Tobacco Reform Act suggests an easy counting method for cigarettes and cigars may not override a statutory mandate that assessments be 'allocated on a pro rata basis' within each class of tobacco product, *id.* 518(e)(1). Prime Time's interpretation suggests there is at least one way to interpret FETRA's provisions consistently and in harmony, with none made superfluous or insignificant."

*Prime Time,* 599 F.3d at 683.

This passage makes clear that the Court did not find any ambiguity in what FETRA requires. The Court found that FETRA's language does not allow USDA to "ignore the pro-rata-basis limitation Congress imposed on assessments within a

tobacco class," or to "override" the "statutory mandate that assessments be

'allocated on a pro rata basis' within each class of tobacco product." *Id*. The

reason the Court remanded was not any ambiguity in what FETRA requires.

Rather, the Court remanded because, although it perceived that "Prime Time's

interpretation suggests that there is at least *one way* to interpret FETRA's

provisions consistently and in harmony, with none made superfluous or

insignificant," *id.* (emphasis added), the Court was unwilling to say that Prime

Time's interpretation was the *only* way to do so.  The Court thus offered USDA the

opportunity to consider other possible ways to harmonize the "pro rata basis" and

allocation-by-volume mandates in subsection 518d(e)(1) of FETRA with the

reference in subsection 518d(g)(3)(A) to determining the "volume of  domestic

sales" based on "the number of . . . cigars."

In short, what this Court found possibly "not . . . susceptible of only a single

interpretation" was *how* to give effect to all of FETRA's provisions, not *whether*

USDA must do so.  This is a *Chevron* Step 1 issue, because by imposing the "pro

rata basis" requirement in FETRA, Congress has "unambiguously foreclosed"

USDA's current interpretation of FETRA.  *See Catawba Cty., North Carolina v.*

*EPA,* 571 F.3d 20, 35 (D.C. Cir. 2009).  It is well-established that "Congress may

[do] so in one of two ways – either by prescribing a precise course of conduct other

than the one chosen by the agency, or by granting the agency a range of

interpretive discretion that the agency has clearly exceeded." *Village of Barrington,* 636 F.3d at 659.  Here, FETRA may not prescribe a precise Step B allocation method for cigars.  But Congress did confine USDA's "interpretive discretion" to fashion a Step B allocation method – it directed that the method chosen by USDA must comply with the explicit "pro rata basis" requirement of subsection 518d(e)(1).  USDA's Per Stick Rule does not comply with that statutory mandate, as the Court already recognized in *Prime Time.*  It therefore fails the *Chevron* Step 1 test.  *See id.* at 660 (*Chevron* Step 1 is violated "if the agency has . . . exceeded the statute's clear boundaries.")

This conclusion accords with *Prime Time's* limited holding:  that the Per-Stick Rule "is not mandated by the plain text of FETRA."  *Prime Time,* 599 F.3d at 683.  The question here is a different one:  whether the Per-Stick Rule is *permissible* under FETRA.  Although this Court did not answer that question in *Prime Time,* for the reasons just discussed, the answer follows necessarily from the Court's recognition that the "pro rata basis" requirement in subsection 518d(e)(1) is a "statutory mandate."  Under *Chevron* Step 1, "that is the end of the matter." *Chevron,* 467 U.S. at 842; *see, e.g., Sierra Club v. EPA,* 536 F.3d 673, 677 (D.C. Cir. 2008) (Holding "under step one of *Chevron* that Title V of the [Clean Air] Act unambiguously precludes EPA's interpretation in the 2006 rule").  Given the differing volumes of tobacco in large and small cigars, allocating the FETRA

37

assessment to cigar companies on a per-stick basis cannot possibly comply with FETRA's requirement that the allocation be made "on a pro rata basis" according to "gross domestic volume."  USDA's Per-Stick Rule does not give effect to that explicit FETRA provision, and therefore is invalid under *Chevron* Step 1.

For the same reasons this case is not, as the district court thought, *see* JA__[Dkt. #51, pp. 15-17], in the mold of cases like *Peter Pan Bus lines, Inc. v. Federal Motor Carrier Safety Admin,* 471 F.3d 1350 (D.C. Cir. 2006) and *PDK Laboratories, Inc. v. DEA,* 362 F.3d 786 (D.C. Cir. 2004).  It is true that in all three cases this Court initially held that the agency's interpretation was not compelled by the statute, and remanded to allow the agency to apply its interpretation of the statutory language.  But *PDK* and *Peter Pan* did not involve, as this case does, a "statutory mandate" that was binding on the agency and confined its "interpretive discretion."  *See Village of Barrington, Illinois*, 636 F.3d at 659.  Moreover, in those cases, unlike here, this Court identified an ambiguous term in the statute and specifically directed the agency on remand to resolve that textual ambiguity.  *See PDK,* 471 F.3d at 1353 ("[W]e find the text of the statute to be ambiguous."), 1354-55 ("[T]he case is remanded to the [agency] to fill the gap in section 13902(a)(1) by interpreting the ambiguous term 'applicable' in subsection (a)(1)(A)."); *Peter Pan,* 362 F.3d at 797-99 (finding statutory term not "plain," and remanding for agency to interpret the term).

In this case the Court did not remand so USDA could interpret an ambiguous statutory term, but rather so USDA could consider whether, in addition to Prime Time's proposed alternative Step B allocation method, there was some other, preferable interpretation of FETRA that also "interpret[s] FETRA's provisions consistently and in harmony, with none made superfluous or insignificant." *See Prime Time*, 599 F.3d at 683. Because of the "statutory mandate" in subsection 518d(e)(1), this is simply not a case, like those cited by the district court, *see* JA__[Dkt. #51 p. 17-18], where on remand the agency "could come to the same conclusion after the agency has properly considered the matter." JA__[Dkt. #51 p. 18].[9]

## II.    USDA's Per-Stick Rule Is Also Invalid Under *Chevron* Step 2.

Even if it were appropriate to apply *Chevron* Step 2, USDA's Per-Stick Rule still would have to be invalidated. For several different reasons, the district court was incorrect to conclude that *Chevron* Step 2 principles require deference to the Final Interpretation's assertion that the Per-Stick Rule properly implements FETRA. First, because the Per-Stick Rule fails to give effect to a "statutory

---

[9] In addition to misunderstanding the *Prime Time* decision, the district court repeatedly mischaracterizes Prime Time's position regarding its proposed alternative Step B allocation method for cigars. Prime Time never asserted that *Prime Time* found "its interpretation of the statute was correct and binding on remand," *see* JA__[ Dkt. #51 p. 14], but only that the proposed alternate method showed, as this Court recognized, "one way to interpret FETRA's provisions consistently and in harmony." 599 F.3d at 683.

mandate" in FETRA, the Per-Stick Rule is not a "permissible" construction of FETRA to which deference is owed. Second, USDA's explanation in the Final Determination of how the Per-Stick Rule purportedly complies with all relevant FETRA provisions – including subsection 518d(e)(1) – is internally inconsistent and therefore arbitrary. Third, the Final Interpretation does not even address, let alone justify, the actual language of the Per-Stick Rule, which is unreasonable on its face because it explicitly singles cigars out for unique Step B treatment that does not comply with FETRA's "pro rata" basis requirement. Fourth, the Final Interpretation is also not entitled to deference, and should be disregarded, because it is not the product of any actual rulemaking but rather was first developed to support USDA's litigation position and is tainted by USDA's financial self-interest in recovering the disputed assessment amounts.

**1.     The Per-Stick Rule Is Not A "Permissible" Interpretation of FETRA**.

Under *Chevron* Step 2, courts only defer to agency interpretations of a statute that are "permissible." *See, e.g., Chevron,* 467 U.S. at 843 ("[I]f the statute is silent or ambiguous . . . , the question for the court is whether the agency's answer is based on a permissible construction of the statute."); *Village of Barrington,* 636 F.3d at 660 ("At *Chevron* step two we defer to the agency's permissible interpretation, but only if the agency has offered a reasoned explanation for why it chose that interpretation.") (citation omitted). USDA's Per-

Stick Rule is not a permissible interpretation of FETRA – the Per-Stick Rule gives no effect to the statutory mandate that assessments be allocated among cigar companies on a "pro rata basis" according to "gross domestic volume."

USDA's Final Interpretation, which is addressed in detail below, cannot cure this defect in USDA's Per-Stick Rule. The fundamental rule of statutory construction applicable here is that is that "effect must be given, if possible, to every word, clause and sentence of a statute." *See In re Surface Mining Regulation Litig.,* 627 F.3d at 1362. USDA cannot "give effect" to FETRA's "pro rata basis" requirement by discussing FETRA's terms in the Final Interpretation. The requirement is that USDA give effect FETRA's statutory mandate *in the applicable regulation*. This Court recognized in *Prime Time* that the Per-Stick Rule does not give proper effect to FETRA's statutory language, and the unchanged Per-Stick Rule still does not do so – regardless of any insistence to the contrary by USDA in the Final Interpretation.

As previously discussed, the statutory construction problem in this case arises not from any ambiguous term, but from the presence in FETRA of two distinct provisions that point in different directions. Subsection 518d(e)(1) imposes the "pro rata basis" requirement, whereas subsection 518d(g)(3)(A) provides for measuring the "volume of domestic sales" for cigars by the "number" of cigars. Faced with these differing provisions, USDA is required to give effect to

41

both, "if possible" – and this Court already recognized in *Prime Time* that it is possible.

There is no real dispute that USDA is required to give effect to both provisions. Both the Final Determination and the district court opinion purport to explain that USDA has in fact given effect to both provisions. *See* JA__[AR63-67]; JA__[ Dkt. #51, pp. 18, 25-28]. But the bottom line is that the Per-Stick Rule does not do so – it implements only the "number of . . . cigars" language in subsection 518d(g)(3)(A), and gives no effect to FETRA's statutory mandate that assessments on cigar companies, which sell both large and small cigars containing differing volumes of tobacco, be on a "pro rata" basis according to "gross domestic volume." The Per-Stick Rule by definition is not proportionate to the differing tobacco volumes in large and small cigars, and no amount of explanation in the Final Determination (or the district court opinion) can change that fact.

When faced with potentially inconsistent statutory provisions, agencies are nevertheless required to give effect, "if possible, to every word, clause and sentence." *See In re Surface Mining Regulation Litig.*, 627 F.2d at 1362. Instructive in this regard is *Citizens to Save Spencer Cnty v. EPA,* 600 F.2d 844 (D.C. Cir. 1979). There, the Court determined that "Congress wrote inconsistent instructions into sections 165 and 168 [of the Clean Air Act] and that the two

42

sections cannot be resolved by favoring one of them above the other[.]" *Id*. at 866. In that circumstance, the Court explained:

> [W]e are guided by the rule that the maximum possible effect should be afforded to all statutory provisions, and, whenever possible, none of those provisions rendered null or void.  We hold that this principle applies with equal strength when statutory provisions are in certain respects inconsistent.

*Id.* at 870-71; *see id.* at 872 ("[T]o give effect to just one of the contested provisions would give full rein to just one of perhaps many competing interests that in the final legislative enactment were given weight, and would work a serious injustice to some of those interests"); *cf. Am. Fed'n of Gov't Emps., AFL-CIO  v. Gates*, 486 F.3d 1316 (D.C. Cir. 2007) (upholding regulation based on plain statutory language, but indicating that even under a *Chevron* step two analysis, the Court would have upheld the regulation because it "could not say that [the agency's] interpretation . . .is an unreasonable way of harmonizing the two statutory provisions").

The alternative Step B allocation method that Prime Time previously proposed is consistent with these principles.  Prime Time's proposed method would first divide cigars into large and small categories based on volume, thus honoring the "pro rata basis" requirement of subsection 518d(e)(1), and then allocate the FETRA assessment within each category on a per-stick basis, thus honoring the "number . . of cigars" language of subsection 518d(g)(3)(A).  *See* 599

F.3d at 682-83 (noting Prime Time's proposal).   Notably, Prime Time's proposed

method divides cigars into the large and small categories based on excise taxes

paid, *see* JA__[LR7 FS ¶¶ 45-46, 9], the same metric USDA uses in the Step B

Regulation to allocate the FETRA assessment among companies within all tobacco

product classes other than cigars.  *See* 7 C.F.R. § 1463.7(c).

Although the district court correctly noted that USDA is not required to

adopt Prime Time's Step B allocation method, JA__[Dkt. #51, pp. 17-19], USDA

was required on remand to give effect to FETRA's "pro rata basis" mandate, and

Prime Time's proposed method shows that there is "at least one way" to do so.  *See*

*Prime Time,* 599 F.3d at 683.  The unchanged Per-Stick Rule gives no effect to the

"pro rata basis" requirement.  It therefore is not a permissible interpretation of

FETRA, and is invalid even under *Chevron* Step 2.  *See Republican Nat. Comm. v.*

*FEC,* 76 F.3d 400, 406-07 (D.C. Cir. 1996) (holding, under *Chevron* Step 2, that a

requirement in a regulation was not a permissible interpretation of the underlying

statute in part because the requirement was "unreasonable and contrary to the

statute."); *see also Abbott Labs v. Young,* 920 F.2d 984, 988 (D.C.Cir. 1990) ("The

"reasonableness" of an agency's construction depends on the construction's "fit"

with the statutory language as well as its conformity to statutory purposes.").

**2.    USDA's Explanation Of The Per-Stick Rule In The Final Interpretation Does Not Give Effect To FETRA's "Pro Rata Basis" Requirement.**

USDA's insistence in the Final Interpretation that the Per-Stick Rule

actually does give effect to the "pro rata basis" requirement in FETRA subsection

518d(e)(1) is unreasonable and wrong, even on its own terms.  For this reason as

well, the Final Interpretation is not entitled to *Chevron* Step 2 deference.  *See, e.g.,*

*Natural Res. Defense Council v. Daley*, 209 F.3d 747, 753 (D.C. Cir. 2000)

(holding that agency interpretation "so completely diverge[d]" from statutory

requirements  "that it cannot survive scrutiny under *Chevron* Step Two.").

**a.    The Final Interpretation is Internally Inconsistent And Therefore Arbitrary.**

In discussing USDA's Step B allocation method, the Final Determination

focuses on the term "share" in the phrase "share of gross domestic volume"

contained in subsection 518d(e)(1).  *See* JA__[AR63-65].  The Final Interpretation

asserts that a "share" of gross domestic volume may be measured on a per-stick

basis for cigars (and cigarettes) and by weight for other tobacco products.  *See*

JA__[AR63-65].  At best that assertion stretches the statutory term "share" too far,

because it violates the rule of construction that a statutory term should have one

consistent meaning, not two different meanings for the same term (*i.e.,* "share").

*See, e.g., Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("To give the[] same words

a different meaning for each category would be to invent a statute rather than

45

interpret one."); *id.* at 382 ("would render every statute a chameleon"); *see also United States v. Santos,* 553 U.S. 507, 522 (2008) (plurality) (*Clark* "held that the meaning of words in a statute cannot change with the statute's application.").

More fundamentally, the issue is not the meaning of "share" in subsection 518d(e)(1), but the meaning of the terms "pro rata basis" and "volume," and specifically the application of FETRA's requirement that assessments be "allocated on a pro rata basis among [companies] based on each [company]'s share of gross domestic volume." *See* 7 U.S.C. § 518d(e)(1). The Final Interpretation never addresses this entire statutory phrase – or the crucial term "pro rata"– and therefore does not even purport to explain how the Per-Stick Rule is consistent with that term or the key statutory phrase containing it.

At worst, the Final Interpretation's discussion of the Step B allocation process is nothing but agency double-speak. The Final Interpretation acknowledges that there is a "common metric" for determining, at Step A, the "share of gross domestic volume" of each of the tobacco products subject to FETRA assessments, despite the fact that "some [products] are measured by weight and others by stick count." JA__ [AR58]. The "common metric" the Final Interpretation identifies is based on excise tax rates for the tobacco products subject to FETRA assessments. JA__[AR58]. Yet in discussing USDA's Step B methodology, and attempting to defend the Per-Stick Rule for cigar companies, the

46

Final Interpretation asserts that "the term 'gross domestic volume' lacks a common metric, and as a result, the term 'share of gross domestic volume' also lacks a common metric." JA__[AR63] (Final Interpretation) (emphasis added). On that basis, the Final Interpretation concludes that for Step B purposes, "[o]ne manufacturer or importer may have a 'share of gross domestic volume' that is composed of number of cigar[s]; another may have a 'share of gross domestic volume' that is measured in pounds of roll-your -own tobacco.' JA__ [AR63].

The government cannot have it both ways, particularly because the identical phrase – "share of gross domestic volume" – appears in the FETRA subsections governing both the Step A and Step B allocations. *Compare* 7 U.S.C. § 518d(c)(2) (governing Step A allocation) *with id.* 518d(e)(1) (governing Step B allocation); *see Ratzlaf. v. United States,* 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."). There either is, or is not, a "common metric" across all covered tobacco product categories for the statutory phrase "share of gross domestic volume."

Like the agency's attempt to justify its regulation in *Bus. Roundtable*, 647 F.3d 1144, the Final Interpretation's attempt to justify the Per-Stick Rule is "internally inconsistent and therefore arbitrary." *See id.* at 1153; *see also Gen. Chem. Corp. v. United States*, 817 F.3d 844, 857 (D.C. Cir. 1987) (agency analysis

47

was "internally inconsistent and inadequately explained" and therefore "arbitrary and capricious and not supported by substantial evidence"). The Final Interpretation's "arbitrary" and "inconsistent" explanation does not justify singling out cigars for different Step B treatment than USDA applies to the other five classes of tobacco products subject to the FETRA assessment.

In any event, even if the term "share" could properly be given different meanings as applied to different classes of tobacco products, measuring a cigar company's "share" of "gross domestic volume" by the number of cigars – regardless of the differing volumes of tobacco in large and small cigars – still would give no effect to the statutory term "pro rata basis" or the word "volume" in subsection 518d(e)(1). No amount of explanation, in the Final Interpretation or elsewhere, can demonstrate that a per-stick allocation of the FETRA assessment among cigar companies which sell both large and small cigars gives effect to the statutory requirement that such allocation be on a "pro rata basis" according to tobacco volume.

In attempting to justify the Per-Stick Rule, the Final Determination also criticizes Prime Time's proposed alternative Step B allocation method for purportedly creating seven categories of tobacco products, contrary to FETRA's statutory language prescribing six categories and legislative history suggesting Congress rejected a seven-category scheme. JA__[AR22-23]. The district court

48

wrongly accepted this criticism, *see* JA__[Dkt. #51 pp. 28-29], which is more

USDA double-speak.

As the Final Interpretation acknowledges, in order to perform Step A – *i.e.,*

to apportion the total annual FETRA assessment among the six classes of tobacco

products subject to FETRA – USDA itself subdivides cigars into large and small

cigar categories.  USDA apportions the FETRA assessment at Step A by

multiplying "the volume of tobacco products removed" for a given class of tobacco

product by "the maximum 2003 excise tax rates" for each class of product.

JA__[AR58].  As the Final Interpretation also explains, "[t]he calculations become

more complex for cigars," because "[c]igars are taxed at two different rates:  one

rate for 'small' cigars and one rate for 'large' cigars."  JA__ [AR59-60].

Therefore:

> To account for different excise tax rates, *two sub-calculations are*
> *necessary.*  First, for small cigars . . . . Second, for large cigars. . . .
> The totals from those two sub-calculations are added together to arrive
> at a dollar figure for the cigar class as a whole.

JA__[AR60] (emphasis added).

Subdividing cigars into large and small categories in this manner at Step A

does not "create" seven categories of tobacco products.  It simply reflects the

different excise tax rates for large and small cigars, and USDA's use of excise tax

rates to calculate the Step A allocation of the FETRA assessment among the six

tobacco product classes covered by FETRA.  Prime Time's proposed Step B

49

allocation method similarly uses the different excise taxes paid for the large and small cigar categories to calculate a Step B allocation among cigar companies – it would first divide cigars into large and small volume categories based on excise tax data, and then allocate the overall cigar assessment on a per-stick basis within each category.  *See* JA_[LR7 FS ¶¶ 45-46, 9].  This methodology, like USDA's comparable use of the different cigar excise tax rates at Step A, cannot legitimately be criticized as "creating" seven tobacco product classes.   Moreover, Prime Time's Step B methodology, by recognizing the differing volumes of tobacco in large and small cigars – as reflected in the different excise tax rates for the two cigar categories – gives effect to FETRA's  "pro rata basis" requirement .[10]

The Final Interpretation does not even acknowledge the tension between the "pro rata basis" mandate of FETRA subsection 518d(e)(1) and the "number of . . . cigars" language of subsection 518d(g)(3)(A).  Instead, purporting to build on its analysis of the term "share," the Final Interpretation presents a convoluted discussion of subsections 518d (f) and (g) of FETRA that boils down to insistence that the Per-Stick Rule does in fact give effect to all FETRA provisions.  USDA concludes:  "we can think of no better reading of the statute than the one we give it."  JA __[AR 84].  That conclusion is no different in substance than saying that

---

[10] The Final Determination also criticizes Prime Time's proposal by noting that within the category of large cigars the volume of tobacco in each cigar can vary. JA__[AR24].  Prime Time's proposal does not have to be perfect, but does have to give effect to FETRA's express statutory terms – and it does.

FETRA, properly understood, *requires* the Per-Stick Rule – which is contrary to this Court's holding in *Prime Time*.

In sum, because USDA's Final Determination is internally inconsistent, arbitrary and unreasonable – as well as contrary to *Prime Time* – it cannot justify the Per-Stick Rule even under *Chevron* Step 2.

### b. The Final Interpretation Does Not Justify Or Even Address The Actual Language of the Per-Stick Rule.

The Final Determination also cannot justify the Per-Stick Rule because it never addresses the actual language of that Rule, or of any other part of USDA's Step B Regulation at 7 C.F.R. § 1463.7. The language of the Step B Regulation, which includes the Per-Stick Rule, *see id.* § 1463.7(c), does not implement or even mention the "pro rata basis" requirement of subsection 518d(e)(1) of FETRA.

Instead, USDA's Step B Regulation provides for Step B allocation of the FETRA assessment on the basis of each company's "adjusted market share," *see id.* § 1463.7(a), a term not used in FETRA. The Step B Regulation provides, for "each manufacturer or importer of a class of tobacco products except for cigars," that USDA will determine the company's adjusted market share as the company's "share of excise taxes paid of that class of tobacco products." *See* 7 C.F.R. § 1463.7(c). "With respect to cigars," however, USDA "will determine the adjusted market share . . . based on the number of such products." *Id.*

The Final Determination does not even purport to explain how this language of the Per-Stick Rule gives effect to FETRA's requirement that the FETRA assessment attributed to cigars as a class be allocated at Step B "on a pro rata basis. . . based on each manufacturer's or importer's share of gross domestic volume." *See* 7 U.S.C. § 518d(e)(1).  The Final Determination simply does not address the actual language of the Per-Stick Rule, which on its face singles our cigars for unique Step B treatment that has nothing to do with allocating the FETRA assessment on a basis that is "pro rata," or proportionate, to tobacco volume.

> **c.      The Final Interpretation Is Also Not Entitled To Deference Because It Is Not The Product of Any Actual Rulemaking And Was First Developed To Support USDA's Litigation Position And Financial Interest In The Disputed FETRA Assessments.**

In addition to its substantive deficiencies, USDA's Final Interpretation is also not entitled to deference under *Chevron* Step 2 – and cannot justify the Per-Stick Rule – because it was not developed in a rulemaking proceeding but only in the course of this litigation, to justify USDA's litigation position and support its claim to more than $11 million in disputed FETRA assessments.

In deferring to the Final Interpretation, the district court repeatedly asserted that it was the product of notice and comment rulemaking.  JA__[Dkt. #51, pp. 2, 8, 19, 31, 33].  That is not correct.  The Final Interpretation did not "make" any rule.  To the contrary, USDA stated in the "request for comments" it issued

following this Court's *Prime Time* decision that any change to its regulations

"would be published in a subsequent rulemaking document."  *See* 76 Fed. Reg.

15859, 15864 (March 22, 2011).  Because FETRA exempts regulations USDA

promulgates under it from the notice and comment requirements of the

Administrative Procedure Act, *see* 7 U.S.C. § 519a(b)(1), if USDA had wanted –

or intended – to revise the Per-Stick Rule, it could have simply published a revised

final rule.[11]

The Final Interpretation is nothing but a post-hoc rationalization for the Per-

Stick Rule, which USDA first developed in the course of this litigation in an

attempt to justify the Per-Stick Rule and support USDA's litigation position.[12]

"Deference to what appears to be nothing more than an agency's convenient

litigating position would be entirely inappropriate."  *Bowen v. Georgetown Univ.*

*Hospital,* 488 U.S. 204, 213 (1988); *cf Village of Barrington,* 636 F.3d at 650

---

[11] That most comments received by USDA favored the Per-Stick Rule, *see* JA__[AR70-17], is both unremarkable and beside the point.  Cigar companies that sell primarily large cigars naturally favor the Rule, because it benefits them by assessing them a smaller amount than if the assessments were made "pro rata" to tobacco volume, as FETRA requires.

[12] USDA did not even publish the Final Determination in the Federal Register. The Final Determination is not a rule, nor even a "preamble" to a rule, and it appears to have no legal status at all.  In essence, the Final Determination is merely a supplemental brief by USDA attempting to support the government's position in this litigation.  *See also Home Concrete & Supply Co., LLC v. United States,* 634 F.3d 249, 256-57 (4th Cir. 2011) (Even an official preamble cannot "re-draft" a statute).

(citing *Georgetown Univ. Hosp.*, and explaining "[w]e give no deference to agency litigating positions raised for the first time on judicial review."). The Final Determination purports to explain that USDA's Per-Stick Rule does give effect to all of FETRA's provisions – including subsection 518d(e)(1) – something that USDA never expressed when it originally promulgated the Per-Stick Rule, *see* 70 Fed. Reg. 7011 (Jun. 10, 2005), or when it litigated the statutory basis for the Per-Stick Rule in prior proceedings before this the district court and then this Court. USDA only asserted on remand, in the course of this litigation – indeed, following and in response to Prime Time's prior summary judgment motion, *see* pp. 17-18, *supra* – that according to USDA, this Court's understanding of FETRA as expressed in *Prime Time* is wrong. When this matter was previously before this Court, "USDA d[id] not [even] maintain that its interpretation of FETRA is a permissible view of an ambiguous statute entitled to deference under *Chevron* step 2." *See Prime Time,* 599 F.3d at 683. The government's new, post hoc rationalization for the Per-Stick Rule should be disregarded for this reason as well.

### 3.    The District Court's Rationale For Upholding The Per-Stick Rule, Which Differs From That In The Final Interpretation, Also Gives No Effect To FETRA's "Pro Rata Basis" Requirement.

The district court concluded that the Per-Stick Rule was an appropriate interpretation of FETRA's terms on grounds entirely different than those articulated by USDA in the Final Interpretation.  *See* JA__[Dkt. #51, pp. 25-28].

Nonetheless, the district court's conclusion has to be rejected for the same

fundamental reason:  no matter how the Per-Stick Rule and FETRA's terms are

analyzed, the Per-Stick Rule does not give effect to the statutory mandate that the

Step B allocation of FETRA's assessment among cigar companies be made on a

"pro rata basis" according to "gross domestic volume."

    The district court acknowledged the interpretive problem here, noting that

what it called the "general statement" in subsection 518d(e)(1) regarding pro rata

basis allocation "may come into conflict with" what the court termed "the more

specific statement" in subsection 518d(g)(3)(A) regarding number of cigars.

JA__[Dkt. #51, p. 27].  The court attempted to resolve that conflict by invoking

"the canon that specific terms in a statute should govern more general ones."

JA__[Dkt. #51, p. 27].  The court then explained:

> USDA might be put in the position of either giving "more" meaning
> to the general pro rata provision – at the expense of giving "less"
> meaning to the specific cigar counting provision – or vice versa.
> Recognizing this tough decision, USDA may choose an interpretation
> that gives fuller meaning to the specific provision.  This a [sic]
> defensible, reasonable interpretation of FETRA's statutory ambiguity.

JA__[Dkt. #51, pp. 27-28].

    This conclusion is plainly wrong, because USDA's Per-Stick Rule by

definition gives *no meaning* to FETRA's "pro rata basis" requirement in subsection

518d(e)(1).  Allocating the FETRA assessment among cigar companies on a per-

stick basis is not, and cannot be, proportionate in any way to the differing volumes of tobacco in large and small cigars.

Ultimately, the district court all but concedes that the Per-Stick Rule gives no effect to the "pro rata basis" requirement in subsection 518d(e)(1). Nowhere in the court's discussion of how the Per-Stick Rule purportedly gives effect to that requirement does the district court even address subsection 518d(e)(1). Instead, the district court's conclusion that the Per-Stick Rule gives appropriate effect to the "pro rata basis" requirement rests entirely on the Final Interpretation's discussion of a different FETRA provision, subsection 518d(e)(2), which provides "No manufacturer or importer shall be required to pay an assessment that is based on a share that is in excess of the manufacturer's or importer's share of gross domestic volume." *See* JA__[Dkt. #51 pp. 24-26].

Addressing that provision the Final Interpretation states, in a passage cited by the district court, that "USDA understands subsection (e)(2) to mean that liability for any unpaid part of the class assessment (by a delinquent manufacturer or importer) is not transferred to a paying manufacturer." JA__[AR78/check] (Final Interpretation). Relying on that passage, the district court states:

> USDA's final determination explained how its rule gives effect to subsection (e)'s pro-rata-basis limitation – the subsection ensures that no company would be forced to make up any shortfall caused by delinquent manufacturer [sic] or importers. *See Final Determination* 12 (AR 65). This interpretation certainly prevents

> subsection (e) from being inoperative or superfluous, although it
> might give the clause less "effect" than Prime Time would like.

JA__[Dkt. #51 p. 26]. This analysis is entirely beside the point. The issue here is

not whether the Per-Stick Rule gives effect to subsection 518d*(e)(2),* which

according to USDA provides that the FETRA assessment liability of delinquent

tobacco companies will not be imposed on other companies. That subsection does

not mention even mention the critical term "pro rata basis." The issue here is

whether the Per-Stick Rule gives any effect to subsection 518d*(e)(1),* which

imposes the requirement that Step B allocations be made on "pro rata basis"

according to "gross domestic volume." The district court does not even attempt to

explain how the Per-Stick Rule gives effect to that requirement or that subsection –

*the court never even addresses subsection 518d(e)(1). See also* JA__[Dkt. 51, p.

28 n.8] (noting purported appropriateness of allowing a specific statutory term to

"abrogate[]" a general term).

Moreover, the meaning the Final Interpretation ascribes to subsection

518d(e)(2), which the district court accepted, is highly strained. It may be that that

provision can be viewed as assuring that other companies will not be liable for

shortfalls caused by delinquent tobacco companies, but the more natural and better

reading of subsection 518d(e)(2) is that it complements the "pro rata basis"

requirement in the companion subsection 518d(e)(1) by directing that "[n]o

manufacturer . . . shall be required to pay an assessment that is based on a share

that is in excess of the manufacturer's . . share of domestic volume."

III.  **The Court Should Invalidate The Per-Stick Rule, And Because Another Remand To USDA Would Be Futile, Direct The District Court To Determine Prime Time's FETRA Assessment Liability Based On Prime Time's Allocation Method – Which This Court In *Prime Time* Recognized To "Interpret FETRA's Provisions Consistently And In Harmony."**

USDA's Per-Stick Rule at 7 C.F.R. § 1463.7(c) does not give effect to the

"pro rata" basis requirement set forth in FETRA subsection 518d(e)(1), even

though, as this Court recognized in *Prime Time,* it is possible for USDA to

interpret FETRA in a way that does give effect to that "statutory mandate."  *See*

599 F.3d at 683.  The Court therefore should declare the Per-Stick Rule invalid.

Because the ten-year period during which FETRA provides for assessments

against tobacco companies is now in its final year, *see* 7 U.S.C. § 518d(b)(1)

(imposing FETRA assessments in "fiscal years 2005 through 2014"), invalidating

the Per-Stick Rule will not result in any significant disruption to the FETRA

program.  That is particularly so because, to Prime Time's knowledge, no other

cigar manufacturer has perfected a challenge to USDA's application of the Per-

Stick Rule by initiating an appeal of FETRA assessments in the manner the statute

requires.  *See* 7 U.S.C. § 518d(i) (prescribing procedure for administrative

challenges); *see also id.* § 518d(j) (providing judicial review).

58

Another remand to USDA would be futile, because USDA, after considering the matter over 31 pages in the Final Interpretation, *see* JA__[AR54-84], "can think of no better reading of the statute than" the Per-Stick Rule, JA__[AR84]. The Court confronted a comparable situation in *Athlone Industries, Inc. v. Consumer Product Safety Comm'n,* 707 F.2d 1485 (D.C. Cir. 1983), where it also was "unlikely that the [agency] would change its position if the case were remanded to it." *See id.* at 1489 ("[R]esort to the agency would in all likelihood be futile."). In that circumstance, the Court recognized that "the interests of judicial economy will be served by a decision on the merits," so the Court "reach[ed] the dispositive substantive issue." *Id.* at 1488. The same is true here, and the Court therefore should also reach the dispositive substantive issue here, particularly given that this dispute is already more than eight years old.

Accordingly, and given that this Court already determined in *Prime Time* that Prime Time's proposed Step B allocation method for cigar companies "interpret[s] FETRA's provisions consistently and in harmony," 599 F.3d 683, the Court should adopt Prime Time's method as a matter of law, and direct the district court to either determine Prime Time's liability for FETRA assessments on that basis or remand to USDA to do so.

59

## <u>CONCLUSION</u>

For these reasons, the Court should reverse the district court, invalidate the

Per-Stick Rule, and remand with instructions to apply the Step B allocation method

Prime Time has proposed and either determine Prime Time's FETRA assessment

liability on that basis or direct USDA to do so.

Respectfully submitted,

  s/Jerry Stouck
Jerry Stouck
Greenberg Traurig LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
(202)331-3173
stouckj@gtlaw.com

Attorney for Appellant
Prime Time International Company

Dated:  October 24, 2013

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 13, 595 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 pt. Times New Roman font.

   s/Jerry Stouck
Jerry Stouck

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2013, I filed and served the foregoing with the Clerk of the Court by causing a copy to be electronically filed via the appellate CM/ECF system.  I also hereby certify that the participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

  s/ Jerry Stouck

Jerry Stouck